IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| JORDON SIMMONS, | ) | CIVIL NO. 13-00037 JMS/KSC |
| | ) | CRIM. NO. 10-00789-02 JMS |
| Petitioner, | ) | |
| | ) | ORDER: (1) DENYING |
| vs. | ) | PETITIONER'S MOTION TO |
| | ) | RECONSIDER AND/OR ALTER |
| UNITED STATES OF AMERICA, | ) | JUDGMENT; (2) DISMISSING IN |
| | ) | PART PETITIONER'S MOTION |
| Respondent. | ) | UNDER 28 U.S.C. § 2255 TO |
| | ) | VACATE, SET ASIDE, OR |
| | ) | CORRECT SENTENCE BY A |
| | ) | PERSON IN A FEDERAL |
| | ) | CUSTODY; (3) DENYING A |
| | ) | CERTIFICATE OF |
| | ) | APPEALABILITY AS TO CERTAIN |
| | ) | CLAIMS; AND (4) REQUIRING |
| | ) | STATUS CONFERENCE ON |
| _____ | ) | REMAINING ISSUE |

**ORDER: (1) DENYING PETITIONER'S MOTION TO RECONSIDER AND/OR ALTER JUDGMENT; (2) DISMISSING IN PART PETITIONER'S MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN A FEDERAL CUSTODY; (3) DENYING A CERTIFICATE OF APPEALABILITY AS TO CERTAIN CLAIMS; AND (4) REQUIRING STATUS CONFERENCE ON REMAINING ISSUE**

## I.  INTRODUCTION

On January 23, 2013, Petitioner Jordon Simmons ("Simmons") filed a

Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a

Person in Federal Custody ("§ 2255 Motion").  Doc. No. 115.  The § 2255 Motion

argues that Simmons was provided ineffective assistance when his counsel, Pamela O'Leary Tower ("Tower") (1) failed to seek dismissal of Counts 4 and 5 of the Indictment alleging violations of 18 U.S.C. §§ 924(c)(1)(A) and (c)(2) where he did not use or carry a firearm during and in relation to a drug trafficking crime; and (2) failed to notify, contact, and/or obtain permission from him when she filed for a voluntary dismissal of his appeal.

On January 30, 2013, the court issued an Order (1) dismissing in part the § 2255 Motion as to Simmons' arguments on Counts 4 and 5 of the Indictment; and (2) requiring Simmons to show cause why his argument as to the appeal should be not dismissed given that he signed a declaration agreeing to the dismissal. *See* Doc. No. 118 (the "January 30 Order").  Simmons responded to the January 30 Order and also filed a Motion to Reconsider and/or Alter Judgment, raising an additional argument that Tower provided ineffective assistance by failing to negotiate a plea agreement.  For the following reasons, the court DENIES the Motion to Reconsider and/or Alter Judgment, and DENIES Simmons' § 2255 Motion and a certificate of appealability as to his arguments regarding Tower's assistance during trial.  As to Simmons' argument regarding his appeal, the court will hold a status conference to discuss its jurisdiction over alleged defects in the appeal process and the appointment of counsel for Simmons for this limited issue.

## II.  BACKGROUND

### A.     The Indictment and Factual Basis for Counts 4 and 5

On October 27, 2010, a grand jury in the District of Hawaii returned a

6-count Indictment charging Simmons with:

- Count 1: conspiring to distribute and possess with intent to distribute 50 grams or more of a mixture containing a detectable amount of methamphetamine in violation of 21 U.S.C. § 841(a)(1);
- Count 2: distributing 50 grams or more of a mixture containing a detectable amount of methamphetamine on October 7, 2010 in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B);
- Count 3: distributing 50 grams or more of a mixture containing a detectable amount of methamphetamine on October 14, 2010 in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B);
- Count 4: knowingly using and carrying a firearm during and in relation to the drug trafficking crime charged in Count III in violation of 18 U.S.C. §§ 924(c)(1)(A) and (c)(2);
- Count 5: conspiring to use and carry a firearm during and in relation to the drug trafficking crime charged in Count III in violation of 18 U.S.C. §§ 924(c)(1)(A) and (c)(2); and
- Count 6: knowingly possessing in and affecting interstate commerce a firearm while having been convicted of a crime punishable by imprisonment for a term exceeding one year in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

The basis of Counts 4 and 5 is that on October 14, 2010, Simmons and

co-defendant Nevin Miguel-Santos met with a confidential source ("CS") at

3

Honolulu's Ala Moana Shopping Center to sell the CS eight ounces of

methamphetamine in exchange for $19,300.[1]  Doc. No. 81, Presentence

Investigative Report ¶ 14.  Simmons and Miguel-Santos arrived in a white Lexus,

after which Simmons provided the methamphetamine to the CS in the CS's

vehicle.  *Id.*  As the CS was handing Simmons the payment, investigators

approached the vehicle, causing Simmons to flee the area and jump from the

second level of the parking structure to the roadway below.  *Id.*  Simmons injured

himself (fracturing the calcaneus bone to his right and left heels), and was arrested

by investigators.  *Id.*  Officers subsequently found a loaded .38 caliber Smith and

Wesson revolver in the middle console of the Lexus (the vehicle Simmons and

Miguel-Santos drove to the transaction).  *Id.* ¶ 17; Doc. No. 129-1, Gov't Ex. A at

30-31.

          After receiving medical treatment, Simmons waived his constitutional

rights and provided a statement to investigators outlining his drug sources and drug

distribution activity in Hawaii.  Doc. No. 81, Presentence Investigative Report

¶ 18.  Although he initially denied knowledge of the firearm recovered from the

Lexus, he later admitted that he brought the firearm to the October 14

---

[1]  Simmons and Miguel-Santos had previously met with the CS on October 7, 2010, where they sold the CS three ounces of methamphetamine for $7,300.  Doc. No. 81, Presentence Investigative Report ¶ 14.

methamphetamine transaction for protection.  *Id.* ¶ 19.

**B.     Tower's Strategy in Representing Simmons**

On December 3, 2010, Tower entered an appearance for Defendant.

Doc. No. 32.  Tower reviewed the discovery in the case, including Simmons'

signed post-arrest statement admitting that he brought the firearm with him for

protection, and reviewed the applicable law, including Ninth Circuit Model

Criminal Jury Instruction 8.71.[2]  Doc. No. 129, Gov't Ex. B, Tower Decl. ¶¶ 29-

---

[2]   Ninth Circuit Model Criminal Jury Instruction 8.71, titled "Firearms -- Using or Carrying in Commission of Crime of Violence or Drug Trafficking Crime (18 U.S.C. § 924(c))," provides:

> The defendant is charged in [Count _____ of] the indictment with [using] [carrying] a firearm during and in relation to [specify applicable crime of violence or drug trafficking crime] in violation of Section 924(c) of Title 18 of the United States Code.  In order for the defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:
>
> First, the defendant committed the crime of [specify crime] as charged in [Count _____ of] the indictment, which I instruct you is a [crime of violence] [drug trafficking crime]; and
>
> Second, the defendant knowingly [used] [carried] the [specify firearm] during and in relation to that crime.
>
> [A defendant "used" a firearm if [he] [she] actively employed the firearm during and in relation to [specify crime].]
>
> [A defendant "carried" a firearm if [he] [she] knowingly possessed it and held, moved, conveyed or transported it in some manner on [his] [her] person or in a vehicle.]

(continued...)

31.  From her review of the evidence, Tower determined that Simmons' prior conviction for second degree escape might expose Simmons to sentencing as a career offender under the Sentencing Guidelines.  *Id.* ¶¶ 5-6.  As a result, Tower received a preliminary report from the United States Probation Office confirming Simmons' criminal history and career offender status.  *Id.*  Upon learning that Simmons would likely be classified as a career offender, Tower began negotiating with the government, and proposed for Simmons to plead guilty to Count 6 to cap Simmons' sentence exposure to ten years.  *Id.* ¶ 7.

When the government rejected this proposal, Tower implemented a two-pronged approach focused on (1) challenging whether second degree escape qualified as a crime of violence (and therefore classifying Simmons as a career offender); and (2) pursuing cooperation with the government to lessen any sentence.  *Id.* ¶¶ 9-10.  This strategy included that Simmons should enter an open plea to the Indictment to preserve his ability to appeal a career offender finding.[3] *Id.* ¶ 10.  Simmons agreed to this approach.  *Id.*

---

[2](...continued)
A defendant [used] [carried] a firearm "during and in relation to" the crime if the firearm facilitated or played a role in the crime.

[3] The court is aware that in this district, plea agreements generally contain a waiver of the right to appeal all but a few limited issues.

### C.    Simmons' Change of Plea and Sentence

On April 19, 2011, Simmons entered a guilty plea as to Counts 1-6 without a plea agreement. Doc. No. 46. During the change of plea, Simmons acknowledged under oath that he was not under the influence of drugs, medication, or alcohol, that he understood the nature of the proceedings, that he discussed the charges in the Indictment with Tower, that he was satisfied with Tower's representation, and that he was pleading to all six counts of the Indictment because he was guilty. Doc. No. 129-1, Gov't Ex. A at 6-8. The government then proffered the facts as to each count of the Indictment (including the facts of Counts 4 and 5 as recited above), and Simmons acknowledged the truth of these facts. *Id.* at 29-41. Specifically, Simmons admitted under oath that he brought the firearm to the October 14, 2010 drug transaction for protection because "it was a large amount of drugs on me" and "sometimes people get robbed or hurt trying to get that drug." *Id.* at 39-40. Simmons further admitted that he carried the firearm during and in relation to the drug transaction to facilitate it. *Id.* at 41.

Prior to sentencing, Tower filed objections to Simmons' classification as a career offender. Doc. Nos. 55, 64, 69. Tower also filed a detailed sentencing memorandum presenting mitigating factors, including Simmons' efforts to cooperate with the United States. Doc. No. 68.

At the September 12, 2011 sentencing, the court determined that

Simmons was a career offender, yet varied downward on the sentence for Counts 1,

2, 3, and 5 to impose a sentence of 144 months as opposed to a sentence within the

Guideline range of 188 to 235 months.  Doc. No. 75; Doc. No. 129-2, Gov't Ex. B,

Tower Decl. ¶ 14.  This sentence of 144 months was within the sentencing range

that would have applied had the court found that Simmons was not a career

offender.  Doc. No. 129-2, Gov't Ex. B, Tower Decl. ¶ 32; *see also* Doc. No. 81, at

25 of 45 (discussing Tower's argument that Simmons is not a career offender and

that the guideline range would be 135 to 168 months).  Overall, Simmons was

sentenced to 144 months as to Counts 1, 2, 3, and 5; 120 months as to Count 6 to

run concurrently to Counts 1, 2, 3, and 5; and 60 months as to Count 4 to run

consecutively to Counts 1, 2, 3, 5 and 6.  Doc. No. 76.

**D.     Simmons' Appeal**

On September 16, 2011, Simmons filed a timely Notice of Appeal.

Doc. No. 77.

On December 14, 2011, one of the individuals against whom

Simmons was prepared to testify, Vernon Butler, pled guilty in Crim. No. 10-

00880 HG (D. Haw.).  Doc. No. 129-2, Gov't Ex. B ¶ 35.

On December 15, 2011, Tower sent Simmons a letter outlining

reasons to dismiss the appeal.  These reasons included that (1) there was a small

likelihood of prevailing on appeal on the career offender issue, (2) even if he

prevailed on appeal, it would likely not affect his sentence because the court

already varied Simmons' sentence downward, and (3) a Rule 35 motion was likely

in light of Butler's guilty plea.  *See* Doc. No. 129-2, Gov't Ex. B at Tower Decl.

Ex. D.  The letter included a draft declaration for Simmons to sign dismissing the

appeal.  *Id.*

Although Simmons did not receive this letter, Tower subsequently

discussed the voluntary dismissal with Simmons and he verbally agreed to it.  *Id.*

¶ 37.  As a result, on December 30, 2011, Simmons' counsel filed with the Ninth

Circuit a Motion to Voluntarily Withdraw Appeal.  *See United States v. Simmons*,

No. 11-10459 (9th Cir.), at Doc. No. 5.  In her Declaration, Tower explained that

she had discussed with Simmons the current state of Ninth Circuit law on the issue

that they were considering raising on appeal, as well as the fact that prevailing on

appeal would likely not affect his sentence.  *Id.* at Doc. No. 5-2, Tower Decl. ¶ 2.

Tower further asserted that Simmons agreed with her assessment and informed her

that he would execute a declaration consenting to the dismissal.  *Id.* ¶ 4.

On January 4, 2012, Tower asked her colleague, Cynthia Kagiwada,

Esq. ("Kagiwada") to take to Simmons a copy of Simmons' declaration and her

letter setting forth the reasons in favor of dismissing his appeal.  Doc. No. 129-2,

Gov't Ex. B, Tower Decl. ¶ 38.  On January 11, 2012, Kagiwada visited Simmons

at FDC Honolulu, presented him with the documents, and had him execute the

declaration.  Doc. No. 129-3, Gov't Ex. C, Kagiwada Decl. ¶ 4.  According to

Kagiwada, Simmons had no questions for her, seemed to know about the

declaration, executed it, and did not appear to be under the influence of medication

or otherwise disoriented.  *Id.*

      Simmons' appearance to Kagiwada is consistent with Tower's

observations of Simmons throughout her representation.  Although Tower was

aware that Simmons was prescribed pain medication for injuries he sustained

fleeing from arrest, she never saw Simmons disoriented, under the influence of

medication, or otherwise unable to understand what was going on.  Doc. No. 129-

2, Gov't Ex. B, Tower Decl. ¶¶ 41, 43.  Indeed, Simmons' medical records from

December 2011 through December 2012 show that he was seen only five times by

physicians, and prescribed the following medications: (1) bisacodyl for

constipation, (2) hydrocortisone cream for a rash, (3) ibuprofen for pain, and

(4) trazodone for anxiety, which he stopped taking in September 2012.  *See* Doc.

No. 129-4, Gov't Ex. D.  These records do not support that Simmons was on

prescription pain medication at this time.  Rather, it appears that Simmons' pain

medication was reduced in October 2010 after he was caught misusing them, and then was tapered off after he underwent surgery on November 1, 2010.  *See* Doc. No. 81, Presentence Report ¶ 63.  Simmons' medical records also fail to indicate any complaints of drowsiness, disorientation, or that he was otherwise incapable of functioning due to medication.

Tower filed Simmons' declaration with the Ninth Circuit on January 15, 2012.  *See* Doc. No. 118 Appendix A.  Simmons' Declaration, signed under penalty of perjury, states that (1) his counsel discussed with him the merits of his appeal and whether it was to his benefit to pursue it; (2) his counsel fully advised him of the consequences of dismissing the appeal; and (3) he chooses not to pursue the appeal and that he voluntarily consents to its dismissal.  *Id.*, Simmons Decl. ¶¶ 2-4.  On January 18, 2012, the Ninth Circuit entered its Order dismissing Simmons' appeal in light of the Motion for Voluntary Dismissal.  The mandate issued that same day.  Doc. No. 93.

## E.     The Government's Rule 35 Motion

On February 6, 2012, Miguel-Santos, against whom Simmons was prepared to testify, was sentenced.  Doc. No. 98.  At Simmons' request, the government waited to file a Rule 35 motion to conceal his cooperation from other inmates.  Doc. No. 129-2, Gov't Ex. B, Tower Decl. ¶ 20.  On September 13, 2012,

11

the government filed a Rule 35 Motion for downward departure based on

Simmons' cooperation against Butler and Miguel-Santos.  Doc. No. 109.  On

September 28, 2012, the court granted the Rule 35 Motion, reducing Simmons'

sentence to 168 months imprisonment, consisting of concurrent sentences of 108

months as to Counts 1, 2, 3, 5, and 6, and a consecutive sentence of 60 months as

to Count 4.  Doc. No. 114.

**F.     Simmons' § 2255 Motion**

On January 23, 2013, Simmons filed his § 2255 Motion.  Doc. No.

115.  The January 30 Order followed, dismissing in part the § 2255 Motion as to

Simmons' arguments on Counts 4 and 5 of the Indictment, and requiring Simmons

to show cause why his argument as to the appeal should be not dismissed given

that he signed a declaration agreeing to its dismissal.  *See* Doc. No. 118.

In response, on February 28, 2013, Simmons filed a (1) Motion to

Reconsider and/or Alter Judgment, Doc. No. 121; and (2) Motion to Show Cause

"Why Remaining Argument In Petition Should not Be Dismissed," Doc. No. 120.

In a March 4, 2013 Order, the court directed the government to respond to both

these motions.  Doc. No. 122.

On March 12, 2013, the court entered an order finding that Simmons

waived his attorney-client privilege as to the issues raised in the § 2255 Motion.

Doc. No. 125.  The government filed a response to Simmons' Motions on May 16, 2013, Doc. No. 129, and Simmons filed no Reply.

### III.  <u>STANDARD OF REVIEW</u>

The court's review of Simmons' Motion is governed by 28 U.S.C. § 2255(a):

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

A court should hold an evidentiary hearing on a § 2255 motion "unless the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b).  "In determining whether a hearing and findings of fact and conclusions of law are required, '[t]he standard essentially is whether the movant has made specific factual allegations that, if true, state a claim on which relief could be granted.'"  *United States v. Withers*, 638 F.3d 1055, 1062 (9th Cir. 2011) (quoting *United States v. Schaflander*, 743 F.2d 714, 717 (9th Cir. 1984)).  "Thus, the district court's decision that [the petitioner's] ineffective assistance claim did not warrant an evidentiary hearing [is] correct if his

13

allegations, when viewed against the record, do not state a claim for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal." *United States v. Leonti*, 326 F.3d 1111, 1116 (9th Cir. 2003) (citing *Schaflander*, 743 F.2d at 717) (quotations omitted).  Conclusory statements in a § 2255 motion are insufficient to require a hearing.  *United States v. Johnson*, 988 F.2d 941, 945 (9th Cir. 1993).  After careful consideration of Simmons' factual allegations and the record as a whole, the court concludes that an evidentiary hearing is not required as to his claims that Tower provided ineffective assistance by failing to obtain a plea agreement and failing to seek dismissal of Counts 4 and 5 -- Simmons makes no specific factual allegations that state a claim upon which relief can be granted as to these claims.[4]

## IV. DISCUSSION

Simmons argues that Tower provided ineffective assistance of counsel when she (1) failed to negotiate a plea agreement for him and instead had him plead guilty to all six counts of the Indictment; (2) failed to seek dismissal of Counts 4 and 5 of the Indictment alleging violations of 18 U.S.C. §§ 924(c)(1)(A) and (c)(2) where he did not use or carry a firearm during and in relation to a drug

---

[4]  Because the court does not address the merits of Simmons' claim that Tower provided ineffective assistance of counsel when she dismissed his appeal, the court does not determine whether a hearing is necessary on that issue.

trafficking crime; and (3) failed to notify, contact, and/or obtain permission from him when she filed for a voluntary dismissal of his appeal.  As described below, the court finds that Simmons has not carried his burden on his first two arguments, and further denies a certificate of appealability as to these issues.  As to Simmons' third argument, the court requires a status conference to discuss jurisdiction and the appointment of counsel over this limited issue.

## A.   Simmons' Ineffective Assistance Arguments Directed to Tower's Actions Before this Court

### 1.   *Legal Standard*

To prevail on an ineffective assistance claim, a § 2255 movant must show that (1) counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).

As to the first prong, counsel "is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Id*. at 690; *see Hughes v. Borg*, 898 F.2d 695, 702 (9th Cir. 1990).  "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent

that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690-91.  The court "'will neither second-guess counsel's decisions, nor apply the fabled twenty-twenty vision of hindsight,' but rather, will defer to counsel's sound trial strategy." *Matylinsky v. Budge*, 577 F.3d 1083, 1091 (9th Cir. 2009) (quoting *Murtishaw v. Woodford*, 255 F.3d 926, 939 (9th Cir. 2001)).  In other words, "[b]ecause advocacy is an art and not a science, and because the adversary system requires deference to counsel's informed decisions, strategic choices must be respected in these circumstances if they are based on professional judgment." *Id.* (quoting *Strickland*, 466 U.S. at 681).

Thus, a § 2255 movant "bears the heavy burden of proving that counsel's assistance was neither reasonable nor the result of sound trial strategy." *Id.* (quoting *Murtishaw*, 255 F.3d at 939).  In arguing that counsel is deficient, a § 2255 movant "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* (quoting *Strickland*, 466 U.S. at 690).  "The court must then consider those acts or omissions against 'prevailing professional norms.'" *Id.* at 1092 (quoting *Strickland*, 466 U.S. at 690).

Even upon showing that counsel's performance is deficient, the § 2255 movant must also show that the deficiency was prejudicial to the

petitioner's defense.  *Strickland*, 466 U.S. at 692.  Stated differently, the petitioner

"must show that there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different."  *Id.*

at 694.  "To determine whether counsel's errors prejudiced the outcome of the trial,

[the court] must compare the evidence that actually was presented to the jury with

that which could have been presented had counsel acted appropriately." *Cannedy v.*

*Adams*, 706 F.3d 1148, 1163 (9th Cir. 2013) (quoting *Thomas v. Chappell*, 678

F.3d 1086, 1102 (9th Cir. 2012)).  "What matters is whether a competent lawyer

would have been able to introduce the evidence, in some form, at trial."  *Id.*  Thus,

"a failure to introduce evidence that is clearly inadmissible cannot be prejudicial,

because there is no chance that the jury ever would have heard that evidence."  *Id.*

A court need not determine whether counsel's performance was

deficient before examining the prejudice suffered by the petitioner as a result of the

alleged deficiencies.  *Strickland*, 466 U.S. at 697.  In other words, any deficiency

that does not result in prejudice necessarily fails.

### 2.  *Application -- Tower's Alleged Failure to Negotiate a Plea*

Simmons argues that Tower provided ineffective assistance by failing

to negotiate a plea deal and instead having Simmons plead guilty to all Counts of

the Indictment.  *See* Doc. No. 121, at 15.  The court rejects this argument.

17

As an initial matter, Simmons did not present this argument in his

§ 2255 Motion, instead raising this argument for the first time his February 28,

2013 Motion to Reconsider and/or Alter Judgment.  Because Simmons failed to

raise this claim in his original § 2255 Motion, it is waived.  *See 389 Orange Street*

*Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999) (determining that district

court did not abuse its discretion when it declined to address an issue raised for the

first time in a motion for reconsideration); *Novato Fire Protection Dist. v. United*

*States*, 181 F.3d 1135, 1141 n.6 (9th Cir. 1999) (noting that "[a] district court has

discretion to decline to consider an issue raised for the first time in a motion for

reconsideration"); *see also United States v. Keller*, 902 F.2d 1391, 1395 (9th Cir.

1990) (holding that issues not raised in § 2255 motion may not be raised for the

first time on appeal).

Further, even if the court addresses this argument, it is wholly without

merit.  Although Simmons generally complains that Tower did not obtain a plea

agreement and Simmons instead pled guilty without the benefit of one, Simmons

fails to identify what actions Tower should have taken.  Rather, the specific

evidence presented establishes that Tower developed a reasonable strategy in light

of the evidence establishing Simmons' guilt of the charges in the Indictment and

his criminal history.   Specifically, after Tower confirmed with the United States

18

Probation Office that Simmons would likely be classified as a career offender under the Sentencing Guidelines, she pursued a plea deal with the government to cap Simmons' sentence.  When the government rejected the plea deal, Tower advised Simmons that pleading guilty without a plea agreement would preserve his right to appeal his sentence if he was found to be a career offender.  Tower also pursued having Simmons provide cooperation with the hope of lowering the sentence given.  The court will not second-guess these strategic decisions, especially where Simmons was informed of and agreed to this strategy.  *See Matylinsky*, 577 F.3d at 1091.

Nor has Simmons established any prejudice.  Rather, Tower's strategy proved effective -- although the court determined that Simmons was a career offender, it sentenced Simmons to a term within the range that would have applied had he not been designated a career offender.  Simmons' sentence was further reduced when the government's Rule 35 motion was granted.  Given these facts, Simmons cannot establish a reasonable probability that, but for Tower's allegedly unprofessional errors, the result of the proceeding would have been different.  *See Strickland*, 466 U.S. at 692.

///

///

### 3.   *Application -- Failure to Seek Dismissal of Counts 4 and 5 of the Indictment*

Simmons argues that Tower provided ineffective assistance by failing to seek dismissal of Counts 4 and 5 alleging that he knowingly used and carried a firearm during and in relation to the drug trafficking crime in violation of 18 U.S.C. §§ 924(c)(1)(A) and (c)(2)[5] (Count 4), and that he conspired to do so (Count 5).

Simmons' precise argument as to these Counts has changed over the course of briefing.  The § 2255 Motion argued that although Simmons brought a firearm to the drug transaction charged in Count 4, he did not "use" the firearm as required by 18 U.S.C. § 924(c)(1)(A) because it remained in Miguel-Santos' car

---

[5]  Sections  924(c)(1)(A) and 924(c)(2) provide:

> (c)(1)(A) Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime--
>
> > (i) be sentenced to a term of imprisonment of not less than 5 years . . . .
>
> (2) For purposes of this subsection, the term "drug trafficking crime" means any felony punishable under the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or chapter 705 of title 46.

while the transaction occurred in another vehicle.  The January 30 Order rejected

this argument, explaining that the Indictment charged Simmons with knowingly

using *and carrying* a firearm during and in relation to a drug trafficking crime, and

that bringing the firearm in the vehicle for protection during the drug transaction

was sufficient to meet the definition of "carrying" the firearm as used in § 924.[6]

*See also Muscarello v. United States*, 524 U.S. 125, 126-27 (1998) (defining

"carrying").

In his Motion for Reconsideration and/or to Alter Judgment, Simmons

clarified his argument, asserting that he did not carry the firearm "during and in

relation to" the drug transaction at issue as required by 18 U.S.C.

§ 924(c)(1)(A) because the firearm remained in the vehicle while the actual

transaction occurred approximately ten to fifteen feet away.  Doc. No. 121, Mot. at

5.  In other words, Simmons now asserts that the drug transaction set forth in

Count 3 of the Indictment spans the limited period of time in which he exchanged

the drugs for money, and at that precise moment, Simmons was not "carrying" the

firearm.  Because this argument similarly has no legal support, the court rejects that

Tower's failure to raise it was deficient much less caused any prejudice to

---

[6] Because the government did not charge Simmons with possession of a firearm, the
court does not address the possession prong of § 924(c).

Simmons.

The phrase "during and in relation to" as used in 18 U.S.C.

§ 924(c)(1)(A) requires that the firearm facilitated or played a role in the crime.

*See Muscarello*, 524 U.S. at 137 (explaining that Congress added the "during and

in relation to" language "in part to prevent prosecution where guns 'played' no part

in the crime"); *Smith v. United States*, 508 U.S. 223, 238 (1993) ("[T]he gun at

least must 'facilitat[e], or ha[ve] the potential of facilitating,' the drug trafficking

offense." (quoting *United States v. Stewart*, 779 F.2d 538, 539 (9th Cir. 1985));

*United States v. Combs*, 369 F.3d 925, 933 (6th Cir. 2004) ("The 'during and in

relation to' element requires that the firearm 'furthered the purpose or effect of the

crime and its presence or involvement was not the result of coincidence.'" (quoting

*United States v. Warwick*, 167 F.3d 965, 971 (6th Cir. 1999)); *United States v.

Mancillas*, 183 F.3d 682, 707 (7th Cir. 1999) (affirming jury instruction defining

"during and in relation to" as including "that the firearm facilitated or had the

potential of facilitating the drug trafficking offense"); *United States v. Mitchell*,

104 F.3d 649, 654 (4th Cir. 1997) ("[I]f a firearm is carried for protection or

intimidation, it is carried "in relation to" the drug trafficking offense within the

meaning of § 924(c)(1)."); *see also* 9th Cir. Model Jury Instr. 8.71 (providing that

a "defendant [used] [carried] a firearm 'during and in relation to' the crime if the

firearm facilitated or played a role in the crime").

   As a result, a firearm is carried "during and in relation to" a drug trafficking crime even where the gun remains in the vehicle used to transport the drugs to where the transaction takes place.  *See, e.g.*, *United States v. Archuleta*, 257 Fed. Appx. 116, 124 (10th Cir. 2007) (determining that where firearm was left in vehicle where transaction occurred close by, the "proximity and the potential to facilitate the offense are present"); *United States v. Rosado*, 866 F.2d 967, 970 (7th Cir. 1989) (affirming conviction where gun was left in vehicle because "[t]he trial judge, sitting as trier of fact, certainly was entitled to conclude that the presence of a loaded revolver so close at hand provided Mr. Rosado with the security and confidence needed to undertake such a large cocaine transaction."); *United States v. Cambrelen*, 18 F. Supp. 2d 226, 230 (E.D.N.Y. 1998) (rejecting argument that defendant did not carry gun "during and in relation to" the drug trafficking crime where he did not bring the gun into the warehouse where the transaction occurred and instead left it in the vehicle); *see also Muscarello*, 524 U.S. at 138 (rejecting argument that statute did not apply where guns were in the trunk of the vehicle).

   That the "during and in relation" to element is met under these circumstances make sense given that a drug "transaction" is not limited to the physical exchange of money for drugs.  Rather, "[t]he actus reus for [drug

23

trafficking] crimes includes activities leading up to the moment when a physical exchange of [drugs] for cash occurred. . . .  These offenses necessarily involve a period of time prior to the final exchange of drugs . . . ."  *United States v. Ramos*, 861 F.2d 228, 230 (9th Cir. 1988).

Applying these principles, Simmons admitted that he brought the firearm to the drug transaction for protection.  Specifically, Simmons admitted under oath that he brought the firearm to the October 14, 2010 drug transaction because "it was a large amount of drugs on me" and "sometimes people get robbed or hurt trying to get that drug."  Doc. No. 129-1, Gov't Ex. A at 39-40.  Simmons further admitted that he carried the firearm during and in relation to the drug transaction to facilitate it.  *Id.* at 41.  Simmons therefore carried a firearm during and in relation to the drug transaction.  Given that Simmons' argument is not supported in law, Tower was not deficient in failing to raise this argument, and Simmons can show no prejudice.

### 4.  *Certificate of Appealability*

In dismissing the § 2255 Motion as to these arguments, the court must also address whether Simmons should be granted a certificate of appealability ("COA").  *See* R. 11 Governing § 2255 Cases in the U.S. Dist. Cts. (providing that "[t]he district court must issue or deny a certificate of appealability when it enters a

24

final order adverse to the applicant"). A COA may issue only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

"The standard for a certificate of appealability is lenient." *Hayward v. Marshall*, 603 F.3d 546, 553 (9th Cir. 2010) (en banc). The petitioner is required to demonstrate only "that reasonable jurists could debate the district court's resolution or that the issues are adequate to deserve encouragement to proceed further." *Id.* (citation and internal quotation marks omitted). The standard "requires something more than the absence of frivolity but something less than a merits determination." *Id.* (internal quotation marks omitted).

The court carefully reviewed all of Simmons' assertions that Tower provided ineffective assistance of counsel during proceedings before this court, and gave him every benefit by liberally construing them and allowing Simmons the opportunity to clarify his arguments. Based on the above analysis, the court finds that reasonable jurists could not find the court's rulings debatable. Accordingly, a COA is DENIED on the issues addressed above.

**B.     Ineffective Assistance Claim Based on Alleged Failure to Obtain Knowing Permission to Dismiss Appeal**

Simmons asserts that although he technically signed the declaration agreeing to a dismissal of his appeal, at the time he was taking percocet and

25

trazodone, Tower was aware that Simmons was taking these medications, and

Simmons was "duped into signing something I was unaware of."  Doc. No. 120,

Resp. at 8.  In other words, Simmons argues that Tower provided ineffective

assistance by submitting his declaration to the Ninth Circuit, where she should

have known that Simmons did not knowingly consent to dismiss his appeal.

It appears that the court does not have jurisdiction over Simmons'

claim attacking events that occurred before the Ninth Circuit.  As the Ninth Circuit

has explained:

> [A] section 2255 proceeding [cannot] be utilized as a
> method of reviewing the action of [the Ninth Circuit] in
> dismissing an appeal.  If an appeal is improvidently
> dismissed in [the Ninth Circuit] the remedy is by way of
> a motion directed to [the Ninth Circuit] asking for a recall
> of the mandate or certified judgment so that [the Ninth
> Circuit] may determine whether the appeal should be
> reinstated.  The recall of the mandate or certified
> judgment for such a purpose is entirely discretionary with
> [the Ninth Circuit].

*Williams v. United States*, 307 F.2d 366, 368 (9th Cir. 1962), *overruled on other*

*grounds by Kaufman v. United States*, 394 U.S. 217 (1969); *see also United States*

*v. West*, 240 F.3d 456, 460-61 n.3 (5th Cir. 2001) (collecting caselaw and

discussing Circuits' differing approaches to handling § 2255 motions challenging

events on appeal); *Feldman v. Henman*, 815 F.2d 1318, 1322 (9th Cir. 1987)

(determining that district court had no jurisdiction over habeas claims alleging

errors by the Ninth Circuit in handling appeal); *United States v. Winterhalder*, 724 F.2d 109, 111 (10th Cir. 1983) (holding that district court lacks authority under § 2255 to create appellate jurisdiction by allowing defendant to file notice of appeal where court of appeals previously had dismissed defendant's appeal); *Cf. United States v. Pearce*, 992 F.2d 1021, 1022 (9th Cir. 1993) (distinguishing *Williams* from the situation where a habeas petitioner claims that he was denied the opportunity to bring an appeal, over which the district court has jurisdiction).

　　*Williams* is squarely on point -- even if Simmons were able to prove that he was incompetent at the time he signed his declaration and that Tower was aware of this fact (factual issues that the court does not address at this time),[7] Simmons is effectively asking this court to change what happened before the Ninth Circuit. The court cannot review what happened before the Ninth Circuit, and cannot recall the mandate and/or reinstate Simmons' appeal.

　　The court is also aware, however, that the Ninth Circuit has assumed

---

[7] As to the issue of when an evidentiary hearing on this issue is necessary, *United States v. Howard*, 381 F.3d 873, 879 (9th Cir. 2004), provides:

> When a § 2255 petitioner's claim of incompetence due to the ingestion of drugs is conclusory or inherently incredible, a district court has the discretion to dismiss the petition without a hearing. When the allegations move beyond bald, conclusory or incredible assertions, however, a hearing is required unless the petition, files and record conclusively demonstrate that the petitioner was competent to plead guilty. Specific, credible evidence that an individual was under the influence of powerful narcotic drugs suffices to move a claim beyond a bald assertion of incompetence.

in some cases (without specifically addressing) that the district court had

jurisdiction to decide claims alleging ineffective assistance of appellate counsel.

*See, e.g.*, *United States v. Gamba*, 541 F.3d 895, 896 (9th Cir. 2008) (affirming

district court's denial of § 2255 motion arguing that appellate counsel was

ineffective by failing to raise certain arguments on appeal); *United States v.

Skurdal*, 341 F.3d 921 (9th Cir. 2003) (reversing district court's determination that

defendant was not deprived effective assistance of appellate counsel); *United

States v. Birtle*, 792 F.2d 846, 847 (9th Cir. 1986) (affirming district court's

determination that claimant failed to establish prejudice on claim that appellate

counsel provided ineffective assistance of counsel by failing to appear at oral

argument and file a reply brief).  Although these cases do not explicitly address the

jurisdictional question, these cases may recognize that the district court may be in

the best position to conduct an evidentiary hearing and/or perform fact-finding in

the first instance.

The court therefore requires the parties' input regarding this issue.  As

a result, the court will schedule a status conference to discuss how to proceed on

this issue, as well as the appointment of counsel for Simmons on this limited issue.

///

///

28

# V.  <u>CONCLUSION</u>

Based on the above, the court (1) DENIES Simmons' Motion to Reconsider and/or Alter Judgment; (2) DENIES Simmons' Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody as to his arguments that Tower provided ineffective assistance of counsel in representing him before this court; (3) DENIES a COA as to these arguments; and (4) requires a status conference to discuss the court's jurisdiction as to Simmons' argument that Tower provided ineffective assistance of counsel by dismissing his appeal and the appointment of counsel.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, July 9, 2013.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Simmons v. United States*, Civ. No. 13-00037 JMS/KSC, Cr. No. 10-00789-02 JMS, Order: (1) Denying Petitioner's Motion to Reconsider And/or Alter Judgment; (2) Dismissing in Part Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in a Federal Custody; (3) Denying a Certificate of Appealability as to Certain Claims; and (4) Requiring Status Conference on Remaining Issue